DOYLE, Presiding Judge.
In November 2009, James Andrews Pestaña entered a negotiated plea of guilty to aggravated assault[1] and was sentenced under the First Offender Act[2] to confinement for a period of ten years, which sentence could be served on probation. In July 2013, the superior court signed an order of discharge after Pestana’s probation officer filed a petition for discharge indicating that Pestaña had fulfilled the terms of his probation. The court subsequently rescinded the discharge order and reinstated Pestana’s original sentence, and Pestaña appeals that ruling. Because the superior court has plenary power to correct its own mistaken ruling during the same term of court, we affirm.
The record shows that Pestaña was charged with two counts of aggravated assault with a deadly weapon, a handgun, arising from a single incident between Pestaña and two alleged victims, Gary Berrong and Scott Albach.[3] The incident was part of an escalating neighborhood dispute allegedly involving roving ducks, a “mooning” incident, and land disturbance causing water on a roadway. Pestaña had become estranged with certain neighbors, and in June 2009, after several confrontations, Berrong and Albach stopped their truck in the roadway and began taking photographs of Pestaña for a pending lawsuit while he mowed his grass approximately 50 feet away. Pestaña, who almost always carried a firearm,[4] pulled a handgun out of his pocket, pointed it at the men, and “told them they needed to keep going.” Berrong and Albach immediately complied.
Based on this incident, Pestaña was arrested and charged with two counts of aggravated assault. In November 2009, Pestaña entered a negotiated plea of guilty to count one (assaulting Berrong with a handgun), and the State agreed to nolle prosequi count two (assaulting Albach with a handgun). In accordance with the plea deal, Pestaña was “sentenced to confinement for a period [of] . . . [ten] years,” noting that the sentence could be served on probation.[5] The *455 terms of his probation included conditions that he not possess any firearms nor have direct or indirect contact with Berrong, Albach, or their families.
On July 3, 2013, a probation officer filed a petition for discharge noting that Pestaña was placed on probation for ten years in November 2009, but also stating that he was eligible for discharge “by having fulfilled the terms of said probation.” The district attorney’s office was not notified of the petition for discharge, nor were the victims, so they did not participate in the discharge process. On July 10, 2013, the superior court signed an order of discharge, which order was entered on July 18, 2013.
Upon learning of the discharge, the State filed on September 5, 2013, a motion for reconsideration stating its lack of notice and the failure to notify any victims in accordance with OCGA § 17-17-1 et seq. The superior court held a hearing at which the State, Pestaña, Berrong, and Albach were present. At the hearing, the State explained that the original petition for discharge was apparently mistakenly generated due to a probation office data entry error that created a 2003 conviction date rather than the correct 2009 conviction date. The State did not introduce evidence to this effect, but Pestana’s counsel also stated at the hearing that “[ojbviously there must have been a miscalculation to put his conviction date down wrong.” Under that erroneous scenario, in 2013, the ten-year sentence would have ended, and Pestaña would have been eligible for discharge as successfully completing his probation term. The discharge petition perpetuated this data entry error by accurately stating the ten-year sentence but incorrectly stating that Pestaña had “fulfilled the terms of said probation” in 2013 — after less than four years. Thus, the discharge petition was not couched in terms of early release prior to the end of the probation period, but instead it was phrased to reflect fulfillment of the term of probation. Despite the apparent error, the discharge petition was generated and submitted to the superior court.
The State also explained that the district attorney’s office had not been notified of the discharge petition, and therefore, neither had any of the victims. The State argued that had it been notified, it would have been able to comply with the notification provisions of the Crime Victims’ Bill of Rights under OCGA § 17-17-1 et seq. Albach testified *456 at the hearing that he was afraid of Pestaña, whom he characterized as “unstable” and well-armed.[6] After hearing the evidence and argument, the superior court granted the State’s motion and reinstated Pestana’s sentence,[7] leaving open the option that it could entertain another discharge petition in the future. Pestaña now appeals the reinstatement of his sentence.
1. Pestaña first argues that the superior court erred because the State’s motion for reconsideration, filed 49 days after the court’s discharge order was entered, was untimely. Because of the unusual procedural posture of the case, Pestaña points to no specific statutory provision explicitly requiring the State’s motion to be filed within a certain date, instead arguing that the motion was akin to a motion for new trial or an appeal, both of which must be filed within 30 days.[8] But it appears from the record that the State did not have notice of the discharge order before 30 days would have elapsed. Under these unique factual circumstances, the State sought to invoke the superior court’s authority over its orders and judgments issued within the same term of court.[9] The superior court explicitly proceeded under this authority in its reinstatement order; therefore, under these facts, the motion was functionally like a motion in arrest of judgment, which “must be made during the term at which the judgment was obtained.”[10] Also, the motion arose out of a defect appearing on the face of the discharge petition and order.* [11] Therefore, the State’s failure to take action within thirty days of the discharge order was not fatal to its motion filed in the same term[12] upon becoming aware of the discharge.[13]
*457 2. Pestaña next argues that any failure to notify the victims or allow them to participate in the proceedings did not require reinstatement of his sentence. It is true that, as Pestaña points out, the victim notification provisions at OCGA § 17-17-1 et seq. are typically required “wherever practicable,”[14] “whenever possible,”[15] or “to the extent possible,”[16] so lack of notification does not necessarily reflect an error requiring correction by the trial court. The State’s appellate brief likewise focuses on the importance of such notice, which serves the laudable policy of allowing crime victims to be aware of the proceedings involving the accused.[17] But pretermitting the legal import of the victims’ notification in the discharge process,[18] the discharge in this case was based on a patent error in the discharge petition — that Pestana’s ten-year sentence was complete.
Courts of record retain full control over orders and judgments during the term at which they were made, and, in the exercise of a sound discretion, may revise or vacate them. . . . During the term of court at which a judgment is rendered[,] the [trial] court has power, on its own motion, to vacate the same for irregularity, or because it was improvidently or inadvertently entered. The plenary control of the court over orders and judgments during the term at which they were rendered extends to all orders and judgments save those which are founded upon verdicts. The power of the court, during the term, is described as plenary, to be used for the purpose of promoting justice, but the court’s discretion, although broad, is not unbounded and should be exercised only upon sufficient cause shown. Hence, [courts] have recognized that this inherent power should not be used unless some meritorious reason is given therefor. However, the right to determine what is a meritorious reason is also addressed to the sound discretion of the [trial] judge, and this [C]ourt will not reverse his or her decision unless such discretion is manifestly abused.[19]
*458 Here, the superior court revisited a discharge order which, on its face, contained an internal inconsistency based on what the court later learned was an inadvertent data entry error in the probation office. As a result, the discharge order incorrectly stated Pestaña had “fulfilled the terms” of his ten-year sentence less than four years into it. This is precisely the type of error that a trial court should have discretion to correct.
Further, the discharge order was not a final judgment founded on a jury verdict such that it violated double jeopardy principles or was unreviewable by the trial court absent a timely motion for new trial.[20] The discharge order was part of the procedure effectuating the first offender disposition of Pestana’s case, and Pestana’s sentence remained unaltered from that which was lawfully entered pursuant to his guilty plea. Nor did the court change Pestana’s eligibility for first offender treatment accorded by his original plea and sentence.
The fact that the case was essentially closed after the discharge does not affect the superior court’s authority to revisit it under the facts presented. For example, in Buice v. State,[21] the Supreme Court addressed a trial court’s authority to vacate a nolle prosequi order that it had previously entered.[22] As the Court explained, a “[n]olle prosequi is the State’s formal action on its decision not to further prosecute an indictment. It is well established that entry of a nolle prosequi terminates the prosecution pending on that indictment and that the State cannot try a defendant on a charge that has been nol prossed.”[23] Thus, after the entry of a nolle prosequi order, that case is no longer pending before the trial court, and the defendant is free from prosecution on that indictment. Even so, the Supreme Court explained that the trial court had inherent authority to vacate its own nolle prosequi order within the same term of court (based on new evidence the trial court was not aware of when it entered the nolle prosequi) and effectively reinstate the original indictment.[24] The Court’s rationale was not a narrow one limited to nolle prosequi orders, but instead broadly based on “well-established Georgia law regarding the plenary control courts of record retain to revise or *459 vacate orders and judgments during the term at which they were entered.”[25]
For the foregoing reasons, we conclude that the trial court did not err by rescinding the discharge order and reinstating Pestana’s original sentence.

Judgment affirmed.

Andrews, P. J., Ellington, P. J., Dillard and McMillian, JJ., concur. Phipps, C. J., and Miller, J., dissent.

 OCGA § 16-5-21 (b) (2).

 OCGA § 42-8-60 (a) (2).

 Much of the factual background is taken from a transcript of a civil proceeding that was made part of the record in this case. We rely on it primarily for context, as it does not directly bear on the legal issues presented on appeal.

 Pestaña had a valid firearm permit.

 Under the first offender statute, OCGA § 42-8-60 (a), a trial court may, in the case of a defendant who has not been previously convicted of a felony, . . . without entering a judgment of guilt and with the consent of the defendant: (1) *455 [d] efer further proceeding and place the defendant on probation as provided by law; or (2) [s]entence the defendant to a term of confinement as provided by law.
Based upon the sentencing sheet and the plea colloquy, it is apparent that the trial court sentenced Pestaña to a term of ten years, albeit to be served on probation, pursuant to OCGA § 42-8-60 (a) (2).

 Albach also referred to Pestana’s heavy use of prescription drugs as a basis for his fear. At an earlier civil hearing, Pestaña had explained that he regularly used oxycodone and hydrocodone for chronic pain due to an injury, as well as antidepressants; all of which, Pestaña testified, impair his judgment.

 The order stated that Pestaña was permitted to serve the remainder of his sentence on probation.

 See OCGA §§ 5-5-40 (a) (motion for new trial); 5-6-38 (a) (notice of appeal).

 See, e.g., Buice v. State, 272 Ga. 323, 325-326 (528 SE2d 788) (2000).

 OCGA § 17-9-61 (b). See generally OCGA § 17-9-61 (a) (“When a judgment has been rendered, either party may move in arrest thereof for any defect not amendable which appears on the face of the record or pleadings.”).

 See OCGA § 17-9-61 (a).

 The terms of court for Towns County Superior Court, which is in the Enotah Circuit, are January 1 and July 1. See OCGA § 15-6-3 (17.1) (A). In this case, the superior court entered the order of discharge on July 10, 2013, and the State filed its motion for reconsideration on September 5, 2013, within the same term of court.

 Cf. Pope v. Pope, 277 Ga. 333, 335 (588 SE2d 736) (2003) (applyingBrace andholding that “considering all the circumstances, including the lack of notice to [the respondent] of the final hearing, . . . the trial court did not err in exercising its inherent power to set aside the [final] judgment”).

 OCGA § 17-17-5 (a).

 OCGA § 17-17-7 (a).

 OCGA § 17-17-8 (b).

 See OCGA § 17-17-1.

 See OCGA § 17-17-15 (c) (The Crime Victims’ Bill of Rights “does not confer upon a victim any standing to participate as a party in a criminal proceeding or to contest the disposition of any charge.”).

 (Citations and punctuation omitted; emphasis supplied.) Buies, 272 Ga. at 324-325, citing Jones v. Heilig Meyers, 223 Ga. App. 277, 278 (477 SE2d 411) (1996), Pledger v. State, 193 *458 Ga. App. 588, 589 (2) (a) (388 SE2d 425) (1989), Giddeons v. State, 156 Ga. App. 800, 801 (275 SE2d 370) (1980).

 See generally Hipp v. State, 293 Ga. 415, 416 (746 SE2d 95) (2013) (The “ ‘plenary control of the court over orders and judgments during the term at which they were rendered extends to all orders and judgments save those which are founded upon verdicts.’ ”), quoting Buice, 272 Ga. at 325.

 272 Ga. 323 (528 SE2d 788) (2000).

 See id. at 323-326.

 Id. at 324.

 See id. at 326.

 Id. at 326.